UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ALABAMA STREET HOLDING COMPANY, LLC, | § § § § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:09-cv-3764 |
| | § | |
| LMTV VENTURES, LLC, | § § | |
| Defendants. | § | |

**MEMORANDUM & ORDER**

Pending before the Court is Plaintiff Alabama Street Holding Company, LLC's ("ASHC") Motion for Summary Judgment. (Doc. No. 21.) Having considered ASHC's motion, the evidence presented, and the applicable law, the Court finds that ASHC's motion should be **GRANTED**.

I. PROCEDURAL BACKGROUND

ASHC originally filed the present Motion for Summary Judgment against LMTV Ventures, LLC ("LMTV'), and two individual defendants, Quan Le and Mydung Truong. Quan Le and Mydung Truong subsequently filed a suggestion of bankruptcy, informing the Court that they had recently filed a joint Chapter 13 Bankruptcy Petition in the United States Bankruptcy Court for the Central District of California. (Doc. No. 23.) The document also stated, "By virtue of 11 U.S.C. §§362 and 1301, the Plaintiff is automatically stayed from further prosecuting this cause of action without prior leave of the bankruptcy court." (*Id*. ¶ 2.)

The Court scheduled a status conference to discuss how the parties wished to proceed with the instant case, given that the corporate defendant, LMTV, was not

1

involved in the bankruptcy proceeding and, therefore, the claims against it were not subject to the automatic stay provision.

After the hearing, LMTV filed a notice informing the Court that it would not file a response in opposition to ASHC's Motion for Summary Judgment. (Doc. No. 25.) Subsequently, the Court granted ASHC's unopposed motion to sever its claims against LMTV from those against Quan Le and Mydung Truong. (Doc. No. 26 & 27.) Given this severance and the stay of the claims against the individual defendants, the Court will resolve ASHC's Motion for Summary Judgment only with regard to its claims against LMTV.[1]

In its complaint, ASHC alleges that LMTV defaulted on a promissory note secured by real property. After LMTV defaulted on the note, ASHC accelerated the indebtedness and sold the property at foreclosure. ASHC now seeks final summary judgment for post-foreclosure deficiency amounts for which, it contends, LMTV remains liable.

## II.  FACTUAL BACKGROUND[2]

On or about December 29, 2005, LMTV executed a Multifamily Note payable to the order of LaSalle Bank National Association ("Original Lender") in the original principal amount of six hundred forty thousand dollars ($640,000) ("the Note"). (Pl.'s Ex. A-1, Doc. No. 21-1.) To secure the Note, LMTV executed a document entitled "Multifamily Deed of Trust Assignment of Rents and Security Agreement" (the "Security Instrument"). The Security Instrument pledges as collateral real property located at 3238

---

[1] ASHC's Motion for Summary Judgment also seeks amounts owed to it under a guaranty signed by the individual defendants. As the claims against the individual defendants were severed and are currently stayed, the Court will not determine at this time whether summary judgment is appropriate on this issue.
[2] The facts are undisputed unless otherwise indicated.

2

Alabama in Houston, Texas ("the Property").  (Pl.'s Ex. A-2, Doc. No. 21-2.)

ASHC contends that, through various assignments, it is the current owner and holder of the Note, the Security Instrument, and related loan documents.  In particular, it asserts that, on March 30, 2006, the Original Lender assigned the Note, the Security Instrument and related loan documents to Wells Fargo Bank, N.A., as Trustee for the Registered Holders of LaSalle Commercial Mortgage Securities, Inc. 2006-MF2, Commercial Mortgage Pass-Through Certificates, Series 2006-MF2 (the "Trustee").  (Pl.'s Ex. A-4, Doc. No. 21-4.)  ASHC further asserts that, in turn, the Trustee assigned the Note and related loan documents to ASHC.  (Pl.'s Ex. A-5, Doc. No. 21-5.)

LMTV made the required monthly payments due under the Note from February 2006 to April 2009, after which it ceased making payments.  LMTV admits that it tendered its last payment under the Note on April 14, 2009.  (*See* Pl.'s Ex. B, Defs.' Answers to Pl.'s Interrogs., Doc. No. 21-22.)

After LMTV stopped making monthly payments, ASHC notified LMTV of its indebtedness and demanded payment in a letter dated July 28, 2009.  ASHC contends that LMTV failed to pay the amount owed by the August 7, 2011 deadline ASHC set in its letter. (Pl.'s Ex. A-6 at 1-3, Doc. No. 21-6.)  Accordingly, ASHC accelerated the entire indebtedness in August 2009 and notified LMTV that the property would be sold at foreclosure if LMTV did not pay off the entire outstanding principal indebtedness, plus accrued and unpaid interest and ASHC's costs and attorney's fees.  (*Id*. at 8-10.)

On August 11, 2011, ASHC posted the Property for a foreclosure sale to be conducted on September 1, 2009.  (Pl.'s Ex. A-7, Doc. No. 21-7.)  Prior to the foreclosure, ASHC requested that CB Richard Ellis ("CBRE") prepare an appraisal report

to determine the "as is" market value of the Property. (Pl.'s Ex. A, Aff. of Stephen W. Brown ¶ 8, Doc. No. 22 (hereinafter "Brown Aff."); Pl.'s Ex. A-10, Doc. No. 21-10.) CBRE's appraisal report dated August 24, 2009, concluded that the "as is" market value of the Property was $385,000. (Pl.'s Ex. A-10.)

ASHC purchased the property from the Substitute Trustee at the September 1, 2009, foreclosure sale with the high bid of $348,000. (*See* Brown Aff. ¶ 9; Pl.'s Ex. A-8, Aff. of Sale, Doc. No. 21-8; Pl.'s Ex. A-9, Substitute Trustee's Deed and Bill of Sale, Doc. No. 21-9.) ASHC asserts that it determined its foreclosure bid of $348,000 based on the following: (1) the "as is" market value as reflected in CBRE's August 24, 2009, report; (2) assuming a six-month holding period to market and dispose of the Property after foreclosure; and (3) assuming an ultimate sale of the Property at $385,000 net of a 6% commission and 1% estimated closing costs. (Brown Aff. ¶ 8.)

After applying the $348,000 foreclosure bid price and other available credits to the total outstanding debt due under the Note, ASHC contends that, as of February 28, 2011, there is a total deficiency of $358,888.63, not including attorneys' fees and expenses. ASHC calculates its deficiency figure by beginning with the alleged unpaid principal balance on the loan as of September 1, 2009, of $617,634.26. It then adds accrued interest from April 1, 2009 to April 30, 2009 (at the rate of 7.13%), in the amount of $3,669,78, plus accrued interest from May 1, 2009 to September 1, 2009 (at the default rate of 10.13%), in the amount of $20,906.92, plus a Prepayment Premium of $24,705.37 (4% of the unpaid principal balance), plus late fees in the amount of $1,078.49 (5% of late monthly payments for the months of September 2008, and May, June, July, and August 2009). ASHC then credits LMTV for its tax and insurance escrow

balance of $8,369.89 and for the $348,000 foreclosure sale price of the Property.  Thus, ASHC argues, the deficiency as of the date of foreclosure was $311,624.93.  Adding the accrued interest (at the default rate of 10.13%) from September 2, 2009 through the date of ASHC's Motion for Summary Judgment in the amount of $47,263.70, it argues, the deficiency is $358,888.63 as of February 28, 2011.   ASHC contends that the default interest has continued to accrue from March 1, 2011 to the present, at the per diem rate of $87.68.

### III.    SUMMARY JUDGMENT STANDARD

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented.  *See* FED. R. CIV. P. 56(c).  Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (quotations omitted).

A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party.  *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000).  This Court must view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.  *Id.*  Hearsay, conclusory allegations, unsubstantiated assertions, and unsupported speculation are not competent summary judgment evidence.  Fed. R. Civ. P. 56(e)(1); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (noting that a non-movant's burden is "not satisfied with 'some metaphysical doubt as to the material facts'" (citing *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986))). Indeed, to survive a motion for summary judgment that is properly made and supported, the opposing party's response cannot rely merely on allegations or denials in the pleadings, but must point to specific facts showing a genuine issue for trial. *See* Fed. R. Civ. P. 56(e)(2).

**IV.    ANALYSIS**

The Note and the Security Agreement provide that Texas law governs any disputes relating to the instruments. (*See* Pl.'s Exs. A-1, A-3.) "Generally, courts apply the parties' choice of law provided the law of the chosen state bears some reasonable relationship to the parties and the transaction." *McAfee, Inc. v. Agilysys, Inc.*, 316 S.W.3d 820, 824 (Tex. App.—Dallas 2010, reh'g overruled) (citing *DeSantis v. Wackenhut*, 793 S.W.2d 670, 677–78 (Tex. 1990); *Lockheed Martin Corp. v. Gordon*, 16 S.W.3d 127, 133–34 (Tex. App.—Houston [1st Dist.] 2000, pet. denied)). In this case, the Property that serves as security for the loan is located in Texas. As such, the law of the chosen state bears a sufficient relationship to the parties and the transaction to justify its application.

Under Texas law, to prevail on a claim to recover a post-foreclosure deficiency amount, a plaintiff must establish the following elements: "(1) the amount due on the note at the time of foreclosure; (2) that proper notice of acceleration has been given; (3) that a valid foreclosure sale was made; and (4) that he has given credit to the obligor for the amount received at the trustee's sale and any other legitimate credit." *Thompson v. Chrysler First Business Credit Corp.*, 840 S.W.2d 25, 28 (Tex. App.—Dallas 1992, no writ) (citing *Caruth Mortgage Corp. v. Ford*, 630 S.W.2d 897, 899 (Tex. App.—Houston [1st Dist.] 1982, no writ); *Williams v. Henderson*, 580 S.W.2d 37, 39–40 (Tex. Civ.

App.—Houston [1st Dist.] 1979, no writ)). ASHC argues that each element of its claim with regard to the deficiency under the Note is satisfied and there are no genuine issues of material fact that would preclude summary judgment in its favor.

### A. Amount Due on the Note

Through affidavit proof, ASHC has demonstrated that LMTV owed $617,624.26 on the Note on September 1, 2009, the date of the foreclosure sale. (*See* Brown Aff. ¶ 10.) Such evidence is competent to prove the amount due on the note. *See Thompson*, 840 S.W.2d 25 at 29. As LMTV has not presented any evidence to controvert ASHC's calculations, there is no genuine issue of material fact as to the amount due on the Note.

### B. Proper Notice of Acceleration

"In Texas, notice that the debt has been accelerated is ineffective unless preceded by proper notice of intent to accelerate." *Jasper Federal Sav. & Loan Ass'n v. Reddell*, 730 S.W.2d 672, 674 (Tex. 1987) (citing *Allen Sales & Servicenter, Inc. v. Ryan*, 525 S.W.2d 863 (Tex. 1975)). Indeed, "[e]ffective acceleration requires two acts: (1) notice of intent to accelerate, and (2) notice of acceleration." *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001). "Both notices must be clear and unequivocal." *Id*. (citing *Shumway v. Horizon Credit Corp.*, 801 S.W.2d 890, 893 (Tex. 1991)). "In the case of a mortgage secured by a deed of trust, such notice must afford an opportunity to cure the default and bring home to the mortgagor that failure to cure will result in acceleration of the note and foreclosure under the power of sale." *Ogden v. Gibraltar Sav. Ass'n*, 640 S.W.2d 232, 233 (Tex. 1982) (citing *Lockwood v. Lisby*, 476 S.W.2d 871 (Tex. Civ. App.—Fort Worth 1972, writ ref'd n.r.e.); *Jernigan v. O'Brien*, 303 S.W.2d 515 (Tex. Civ. App.—Austin 1957, no writ); *Parker v. Mazur*, 13 S.W.2d

7

174 (Tex. Civ. App.—San Antonio 1928, writ dism'd)). "If, after such notice, the mortgagor fails to remedy the breach, then the mortgagee is authorized to accelerate maturity and begin foreclosure proceedings under the deed of trust." *Id*.

In this case, ASHC's counsel sent LMTV a letter on behalf of ASHC dated July 28, 2009, in which it informed LMTV of its default and demanded payment of the amounts then due and owing. The letter also put LMTV on notice that ASHC would accelerate the note in the event LMTV did not pay the outstanding amounts of principal and interest, and any other amounts arising out of the loan documents, by August 7, 2009. When LMTV failed to pay the outstanding amounts, ASHC sent LMTV another letter dated August 11, 2009, notifying LMTV that the note had been accelerated and demanding that LMTV pay the entire outstanding principal indebtedness, plus accrued and unpaid interest and ASHC's costs and attorney's fees. Attached to the letter was a Notice of Substitute Trustee's sale, which was to take place on September 1, 2009, in the event LMTV failed to pay the full amount.

Although ASHC provided only a week during which LMTV could pay the amount due and owing before ASHC accelerated the debt, the Court cannot say that the notice did not afford LMTV an *opportunity* to cure the default. Moreover, the letter did adequately place LMTV on notice that failure to cure the default would result in acceleration of the note and foreclosure. ASHC also adequately apprised LMTV that the debt had, in fact, been accelerated in its letter dated August 11, 2009. LMTV has presented no evidence or argument that proper notice of acceleration was lacking and, thus, the Court finds and holds that it was adequate as a matter of law.

### C. Validity of Foreclosure Sale

8

Section 51.002(a) of the Texas Property Code requires that any foreclosure sale be a public sale at auction held between 10:00 a.m. and 4:00 p.m. on the first Tuesday of the month, at the county courthouse in which the land is located, in the area designated by the commissioner's court. Tex. Prop. Code § 51.002(a). Section 51.002(b) requires that notice be given at least twenty-one days before the date of the sale (1) by posting at the courthouse door; (2) by filing a copy of the notice of sale in the county clerk's office; and (3) by certified mail, return receipt requested to each debtor obligated to pay the debt. *Id*. § 51.002(b).

In this case, the foreclosure sale took place on September 1, 2009, the first Tuesday of that month between 10:00 a.m. and 4:00 p.m. in Harris County, Texas, where the Property is located. ASHC filed and posted the relevant Notice of Substitute Trustee's Sale with the Harris County Clerk on August 11, 2011, the same day that it mailed the letter containing the notice to LMTV and the individual defendants via certified mail, return receipt requested. Service of a notice by certified mail under § 51.002 "is complete when the notice is deposited in the United States mail, postage prepaid and addressed to the debtor at the debtor's last known address." *Id*. § 51.002(e). Thus, ASHC's mailing of the notice on August 11, 2011, was timely. As LMTV has presented no evidence that the foreclosure sale was procedurally improper, the Court finds that it was valid as a matter of law.

### D. Credit for Amounts Received

"Before a mortgagee is entitled to a judgment for any deficiency remaining on its note, it must also prove that it has given credit for the amount received at the trustee's sale and for any other legitimate credits." *Thompson*, 840 S.W.2d 25 at 33. The

9

uncontested summary judgment evidence shows that ASHC has given credit to LMTV for the amount received at the trustee's sale and for LMTV's tax and insurance escrow balance. (Brown Aff. ¶ 10.) LMTV has not pointed the Court to any legitimate credits that ASHC failed to apply and, thus, the Court finds that there is no question of material fact as to the credits received.

V.    **LMTV's AFFIRMATIVE DEFNSES**

In its answer, LMTV asserts the affirmative defenses of offset, payment, and unjust enrichment.[3] Its "offset" defense is based on § 51.003 of the Texas Property Code, which deals with deficiency actions. The Section reads, in relevant part:

> (b) Any person against whom such a recovery is sought by motion may request that the court in which the action is pending determine the fair market value of the real property as of the date of the foreclosure sale. The fair market value shall be determined by the finder of fact after the introduction by the parties of competent evidence of the value. Competent evidence of value may include, but is not limited to, the following: (1) expert opinion testimony; (2) comparable sales; (3) anticipated marketing time and holding costs; (4) cost of sale; and (5) the necessity and amount of any discount to be applied to the future sales price or the cashflow generated by the property to arrive at a current fair market value.
>
> (c) If the court determines that the fair market value is greater than the sale price of the real property at the foreclosure sale, the persons against whom recovery of the deficiency is sought are entitled to an offset against the deficiency in the amount by which the fair market value, less the amount of any claim, indebtedness, or obligation of any kind that is secured by a lien or encumbrance on the real property that was not extinguished by the foreclosure, exceeds the sale price. If no party requests the determination of fair market value or if such a request is made and no competent evidence of fair market value is introduced, the sale price at the foreclosure sale shall be used to compute the deficiency.

ASHC argues that it has established as a matter of law that LMTV is not entitled to an offset because there is no evidence that the Property was sold at foreclosure for less

---

[3] The individual defendants have also pled the affirmative defense of "offset." ASHC has countered that the individual defendants contractually waived their right to an offset in the guaranty agreement. ASHC, however, does not allege that LMTV waived its right to present this defense.

10

than its fair market value. Indeed, it argues, ASHC based its bid on a valid appraisal conducted at the time of the foreclosure and LMTV has presented no evidence of the inaccuracy of that estimate.

Although the Court is troubled by the low price for which ASHC purchased the Property at foreclosure, it must concede that there is no competent evidence that controverts ASHC's assessment of the fair market value of the Property. Indeed, as LMTV has ceased defending this lawsuit, it has not submitted an estimate that calls into question the accuracy of the CBRE appraisal upon which ASHC based its foreclosure sale bid. Accordingly, the Court concludes that LMTV is unable to sustain this affirmative defense as a matter of law.

## VI. CONCLUSION

There remains no genuine issue of material fact as to the four elements ASHC must prove before recovering the deficiency remaining on the Note. Based on the summary judgment record, the Court finds that ASHC is entitled to a deficiency judgment in the amount of $ 370,111.67. Pursuant to the loan documents and § 38.001 of the Texas Civil Practice and Remedies Code, ASHC is also entitled to recover its expenses, including reasonable and necessary attorneys' fees. If ASHC wishes to recover such fees and expenses, it should submit appropriate evidence within thirty (30) days of the date of this Order. ASHC shall also recover post-judgment interest at the applicable statutory rate.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the 7th day of July, 2011.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE